UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SPENCER MASCHEK,<br><br>    Plaintiff,<br><br>v.<br><br>PHILIP VALDEZ, NORMA RODRIGUEZ, CHRISTOPHER ROSE, STEVEN DANFORTH, WILLIAM DEAN, TIMOTHY WENGLER, BRENT REINKE, MARK FUNAIOLE, JANIE DRESSER, NORMAN LANGERAK, MIKE MATHEWS, BILL YOUNG, and CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>    Defendants. | Case No. 3:11-cv-00369-LMB<br><br>**ORDER AND REPORT AND RECOMMENDATION** |

This action is before the Court on the following motions:  Plaintiff's *Motion for Pretrial Conference* (Dkt. 17); Plaintiff's *Motion for Appointment of Counsel* (Dkt. 18); Plaintiff's *Motion to Stay Discovery* (Dkt. 19); and Defendants' *Motion to Dismiss* (Dkt. 20).  The parties have not consented to the jurisdiction of a United States Magistrate Judge.  (*See Notice*, Dkt. 14)  Accordingly, this case will be reassigned to United States District Judge Edward J. Lodge with the following report and recommendation that Defendants' Motion to Dismiss be granted, and Plaintiff's Complaint (Dkt. 3) be dismissed without prejudice.

## REPORT

The Court has studied the affidavits and declarations of Spencer Maschek (Dkts. 3-1; 23-2; 23-3; 28-1), the declaration of Margaret Purcell (Dkt. 20-2), prison grievance records (Dkt. 20), prisoner concern forms dated: July 30, 2009; October 29, 2009; November 4, 2009; November 5, 2009; November 6, 2009; November 9, 2009; November 12, 2009; November 21, 2009; November 30, 2009; January 20, 2010; and June 7, 2010.  (*Defendants' Exhibit E to Purcell Declaration*, Dkt. 21 at 4; *Plaintiff's Exhibits 1-12 to Complaint*, Dkt. 3-1 at 8). The Court also reviewed written prison grievance policy and procedure manuals.  After reviewing the entire record, and considering the arguments of the parties, the undersigned finds, and thus concludes, that dismissal is proper because of Plaintiff's failure to properly exhaust the administrative process prior to filing this action.

## BACKGROUND

This case is one in a number of complaints filed by prisoners alleging a culture of excessive inmate-on-inmate violence promoted by the administration at Idaho Correctional Center (ICC) which is operated by a private entity, Corrections Corporation of America, Inc. (CCA).

Plaintiff alleges that his Eighth and Fourteenth Amendment rights guaranteed under the United States Constitution were deliberately violated by CCA's and other individual prison officials' deliberate indifference to his safety due to prison conditions. As a result of the defendants' alleged deliberate indifference, Plaintiff alleges that he was attacked and beaten by four other inmates on November 3, 2009.  According to Plaintiff,

the attack left him seriously injured.  Despite the injury, Plaintiff claims that prison

officials denied him appropriate medical treatment, and as a result he continues to suffer

from grand mal and petit mal seizures, and "post-traumatic anxiety and depression with

extreme night terrors." (*Complaint*, Dkt. 3).

Further, Plaintiff alleges that the prison employed, and continues to employ, a

practice of concealing inmate assaults.  In fact, he claims that he was issued a false

Disciplinary Offense Report (DOR) and was wrongly disciplined after being assaulted,

which resulted in his being placed in segregation for seven weeks.  He claims that for the

first three of the seven weeks, he was denied basic medical care and clean clothes.

Plaintiff further makes claims against individual members of the Idaho

Commission of Pardons and Parole based on an alleged policy in parole eligibility

determinations of considering the false DORs.  He seeks injunctive relief against all

defendants, as well as compensatory and punitive damages against some defendants,

pursuant to 42 U.S.C. § 1983.

Defendants Philip Valdez, Norma Rodriguez and Corrections Corporation of

America have waived service and an attorney has made an appearance on their behalf.

(*Notice*, Dkt. 12).  The remaining defendants have not made an appearance.  However,

for the ease of orientation, any reference to "Defendants" in this order is meant to

communicate defendants in the general sense, and the Court will not differentiate

between the groups here.

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies prior to the commencements of this lawsuit, and as a result, his lawsuit must be dismissed.

## ANALYSIS

**1.      Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b), Defendants have filed a Motion to Dismiss on the basis that Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss.

**A.      Standard of Law – Exhaustion**

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he may bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo,* 548 U.S. 81, 88 (2006).[2] "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007). The *Jones v. Bock* Court noted the important policy concern behind requiring exhaustion is that it "allows prison officials an

---

[1] 110 Stat. 1321–71, *as amended,* 42 U.S.C. § 1997e, *et seq.*
[2] *Cf. Jones v. Stewart,* 457 F.Supp.2d 1131, 1136–37 (D. Nev. 2006) (if, *at every level of administrative review available,* prison officials review the merits of a grievance that does not meet the applicable procedural rules, such as timeliness, the prisoner has satisfied the administrative exhaustion requirement of *Woodford v. Ngo* ).

opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Where there is an "informal[ ]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo,* 548 U.S. at 103. In *Woodford v. Ngo,* the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id.* at 2383–84. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id.* at 2384.

Failure to exhaust is an affirmative defense that should be brought as an 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119–20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff,* 422 F.3d 926 (9th Cir. 2005).

### B.      Discussion

ICC follows the Idaho Department of Corrections (IDOC) relatively simple grievance procedure.  (*Purcell Declaration*, Dkt. 20-2 at 2).  The inmate must first submit an offender concern form, then a grievance form if informal resolution cannot be accomplished, and finally an appeal of the response to the grievance. (*Id*. at 2-3). An offender must complete all three steps in order to exhaust the prison administrative grievance process. (*Id*.).

ORDER AND REPORT AND RECOMMENDATION - 5

The first step in the inmate grievance process begins with the inmate addressing an Offender Concern Form to the staff member most capable of responding to and, if appropriate, resolving the issue. (*Id.*) The staff member should respond within seven days of receipt of the Offender Concern Form. (*Id.*)

If the issue is not resolved informally at the first step, the offender may then proceed to the second step and file a Grievance Form within 30 days of the incident or problem that is the basis for the grievance (unless the reviewing authority grants an extension of time). (*Id*.) The Grievance Form must contain specific information including the nature of the complaint, dates, places, and names; and the offender must suggest a solution to the issue and can only raise one issue per grievance. (*Id.* at 4.) If the Grievance Form is completed incorrectly, it is returned to the offender using a Grievance/Disciplinary Offense Report (DOR) Transmittal Form. (*Id.*) The Grievance Coordinator returns everything to the offender and does not keep a copy of the incomplete grievance (or any of the attachments).

If the Grievance Form is filled out correctly, the Grievance Coordinator enters the grievance information into the Corrections Integrated System (CIS) electronic database and assigns it to the staff member most appropriate to respond to, and resolve, the grievance. (*Id.*) The staff member's response is then sent to the Grievance Coordinator who logs the information into the CIS database, and that information is then forwarded to a "reviewing authority," who is usually a deputy warden. (*Id.*) The reviewing authority must review the grievance, the staff member's response, and deny, modify or grant the offender's suggested solution. (*Id.*) The reviewing authority then returns the grievance to

ORDER AND REPORT AND RECOMMENDATION - 6

the Grievance Coordinator, who logs the reviewing authority's response in the CIS

database and forwards a printed copy of the response, along with the original grievance

paperwork, to the offender via institutional mail. (*Id.*) A copy of the original Grievance

Form and any attachments are filed in the facility administration area. ( *Id.* at 4.).

If the offender is not satisfied with the reviewing authority's response to his

grievance, he may proceed to the third step by filing an appeal. ( *Id.*) Once the Grievance

Coordinator receives the appeal, it is entered into the CIS database and is forwarded to

the "appellate authority," who is typically the facility head. ( *Id.*)  The appellate authority

must respond within 14 days of receipt of the appeal and notify the Grievance

Coordinator that the appeal has been completed. The Grievance Coordinator logs the

completion date in the CIS database, forwards a printed copy of the grievance and the

offender's original attachments to the offender, and files a copy of the printed grievance,

the original Grievance/Appeal form, and all attachments in the facility administration

area. ( *Id.*) Upon completion of all three steps, the offender grievance process is

exhausted. ( *Id.*)

Here, Defendants concede that during the time period at issue—August 27, 2009

to December 21, 2009—Plaintiff filed eleven concern forms relating to the incidents

raised in Plaintiff's Complaint.  Defendants argue, however, that Plaintiff never

proceeded beyond the initial step of the grievance process, failing to submit even one

grievance form.  (*Id.*)

In Plaintiff's Response, he does not deny that he never completed the formal

grievance process.  However, he contends that he filed an emergency grievance,

ORDER AND REPORT AND RECOMMENDATION - 7

completed that process to the extent possible, and thus exhausted his administrative

remedies.  Plaintiff contends that Defendants never responded to his emergency

grievances, thus preventing him from fully exhausting.

Defendants point to the fact that no emergency grievance has ever been logged in

the CIS database.  While Plaintiff has provided copies of twelve concern forms, he has

not provided any evidence that he filed an "emergency grievance."  In short, the Court

finds Plaintiff's argument unpersuasive and unsupported by the evidence in the record.

The Grievance Coordinator's explanation of the IDOC grievance system is

straightforward and reasonable. The parties have submitted identical evidence showing

that Plaintiff repeatedly filed concern forms, but did not follow-up on them, as required

by IDOC procedure.  Further, the record is absent any evidence that Plaintiff submitted

any "emergency grievance" forms.

After reviewing the parties arguments and documents filed related to Defendants'

Motion to Dismiss, the Court concludes that Plaintiff has not exhausted the

administrative remedies available to him through the IDOC grievance system.

Accordingly, the Court recommends that Defendants' Motion to Dismiss for failure to

exhaust administrative remedies be granted and Plaintiff's Complaint be dismissed.

**2.     Remaining Motions**

Because dismissal appears proper, the remaining motions should be denied as

being moot.

## ORDER

It is ORDERED that this case is REASSIGNED to United States District Judge Edward J. Lodge for all further proceedings and is renumbered to 3:11-cv-00369-EJL.

## RECOMMENDATION

It is hereby RECOMMENDED that:

1) Defendants' Motion to Dismiss (Dkt. 20) be GRANTED and Plaintiff's Complaint (Dkt. 3) be DISMISSED without prejudice.

2) Plaintiff's Motion for Pretrial Conference (Dkt. 17) be DENIED as MOOT;

3) Plaintiff's Motion to Appoint Counsel (Dkt. 18) be DENIED as MOOT;

4) Plaintiff's Motion to Stay Discovery (Dkt. 19) be DENIED as MOOT;

5) Plaintiff's First Motion In Limine (Dkt. 28) be DENIED as MOOT.

DATED: March 6, 2013

Honorable Larry M. Boyle
U. S. Magistrate Judge

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, written objections to this Report and Recommendation must be filed by March 21, 2013, or the right to raise factual or legal objections to the Ninth Circuit may be waived.  This is a report and recommendation and not a final, appealable order, and thus no appeal can be taken.